## The Farmers and Merchants Bank of Memphis *v.* Franklin et al.

Where merchandize is shipped to a factor, with directions to sell it, and apply the proceeds
to the payment of a bill drawn by the owner in favor of the shipper for the repayment of
an advance made by the latter, the factor who receives the consignment is bound to comply
with the conditions upon which it was delivered to him. He cannot apply the proceeds
to the payment of any debt due to himself by the owner.

The commercial books and counting-house furniture of a merchant, and iron chests found in
his counting-house, in which his books and papers are kept, are exempt from seizure. C.
P. 644.

APPEALS from the Commercial Court of New Orleans, *Watts,* J.
*Benjamin* and *Micou,* for the plaintiffs. *Maybin, Claiborne,* and *Grymes,*
for the defendants.

The judgment of the court was pronounced by

Rost, J. *Z. L. Gower,* a needy speculator, operating at Memphis, in the
State of Tennessee, purchased one hundred and ninety-eight bales of cotton
from the firm of *Goodman & Means,* merchants of that place. The terms of
the sale were cash. For the purpose of paying for the cotton, *Gower* offered
to the plaintiffs for discount the bill on the defendants at ten days sight, for the
sum of $6200, upon which this action has been instituted. The plaintiffs refu-
sed to discount, or purchase the bill, until the payment was fully secured by the
drawer. One of the vendors went with *Gower* to the bank, and informed its
officers that the cotton was in the ware-house of *Goodman & Means,* and would
be shipped by them to the defendants, who are factors in the city of New Or-
leans, for account of *Gower,* but subject to the payment of the bill. It was ex-
pressly agreed between the plaintiffs, *Gower,* and *Goodman & Means,* that the
latter should retain the exclusive possession of the cotton, and that it should be
shipped by them to the defendants, under specific instructions to sell it, pay the
bill out of the proceeds of the sale, and account to *Gower* for the balance. On
the faith of that agreement the plaintiffs took the bill, and the cotton was ship-
ped by *Goodman & Means* to the defendants. Letters of advice were trans-
mitted to the defendants with the bills of lading, advising them that *Gower* had
drawn upon them in favor of the cashier of the plaintiffs for $6200, at ten days
sight, that the cotton was shipped by them to cover and protect the amount of
the bill, and was to be sold for account of *Gower.* The defendants took pos-
session of the cotton, and sold it for a sum more than sufficient to pay the bill ;
but, instead of obeying their instructions, they suffered the bill to be protested
for non-acceptance and also for non-payment, and converted to their own use
the whole proceeds of the sale of the cotton, amounting to $6608 46, under
the pretence that *Gower,* the drawer, was indebted to them in the sum of about
$3000, which he had promised to cover by shipments, and for which they had,
as factors, a privilege upon the sum in their hands, superior in dignity to the
claim of the plaintiffs. The plaintiffs have instituted this action to recover the
amount of the bill, and the case is now before us on the devolutive appeal, taken
by the defendants from the judgment rendered against them by the court of the
first instance.

If the privilege claimed by the defendants had really existed in their favor, it

50

FARMERS AND would still be difficult for them to explain, by what rule of law, or precept of
MERCHANTS morals, they have retained to the day of their insolvency the balance of $3600,
BANK OF MEM-
PHIS due by them over and above the amount of that privilege. But it is clear that
v. the privilege could not be enforced to the prejudice of the plaintiffs' rights. In
FRANKLIN.
the case of *Fetter* v. *Field*, ante p. 80, we held that, " according to the course
of trade in this city, the bill of exchange drawn on a particular shipment, accom-
panied by the bill of lading, usually represents the price of the property sold or
the means of reimbursement of the price to some party."

The fact that the bills of lading were accompanied by a letter of advice, in-
forming the defendants that a bill had been drawn which the shipments were
intended to cover and protect, would have affected them with notice that the
cotton had not been paid for, if *Gower* himself had been the shipper ; but he
was not the shipper; the cotton never was in his possession; but was shipped by
*Goodman & Means*, subject to their instructions alone. When the defendants
received the cotton, they became the agents of *Goodman & Means*, and *Gower*
had no right in it till after the instructions of the shippers had been complied
with. The defendants were bound to comply with the conditions upon which
they obtained possession of the cotton. Had they refused to receive it, that
possession would have remained in *Goodman & Means*, and the defendants could
not have frustrated the rights of the plaintiffs by attaching it as the property of
*Gower*, before delivery to him. We are satisfied that the court below has done
justice between the parties.

The record contains another appeal taken under the following circumstances :
The plaintiffs caused the commercial books and counting-house furniture of the
defendants, and also two iron chests found in the counting-house, and in which
the books and papers were kept, to be seized under execution. The defend-
ants took a rule upon them to show cause why the seizure should not be set aside,
on the ground that the effects seized are protected from seizure by law. After
hearing, the rule was made absolute, and the plaintiffs appealed. The de-
fendants rely upon article 644 of the Code of Practice, which exempts from
seizure under execution the tools and instruments necessary for the exercise of
the trade or profession by which a debtor gains a living. They also rely upon
the *dicta* of the late Supreme Court in the case of *Lambeth and another* v. *John
Milton*, 2 Robinson, 81.

There is no dispute between the parties as to the facts of this part of the
case, and we are constrained to say that the judge of the first instance has
made a correct application of the law to them. Since the repeal of the laws
authorizing the creditors of bankrupt merchants to proceed against them for a
forced surrender, that class of debtors stand on the same footing as other insol-
vents, and are entitled to the same immunities under the laws regulating the
execution of judgments.

For the reasons assigned, it is ordered that the judgment of the Commercial
Court be affirmed on the appeals, the defendants paying all the costs of the ori-
ginal suit, and those of their appeal to this court ; the plaintiffs paying the costs
upon the rule in both courts.